UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROSE HARDGERS-POWELL, et al.,

                                        Plaintiffs,

                                                        Case # 16-CV-6612-FPG

v.

                                                        DECISION AND ORDER

ANGELS IN YOUR HOME LLC, et al.,

                                        Defendants.

## INTRODUCTION

Plaintiffs Rose Hardgers-Powell and Yolanda Clay bring a putative class action against Defendants Angels In Your Home LLC, Angels In Your Home, Andy Wegman, and David Wegman for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See* ECF No. 52. Plaintiffs are home health care workers who allege that Defendants failed to pay overtime at the correct rate under state and federal law and failed to comply with a state wage-notice requirement. Before the Court are three motions: Plaintiffs' motion to certify two subclasses for purposes of their NYLL claims (ECF No. 77); Plaintiffs' motion for partial summary judgment (ECF No. 89); and Defendants' motion for partial summary judgment (ECF No. 90). For the reasons that follow, Plaintiffs' motion to certify is GRANTED IN PART and DENIED IN PART; Plaintiffs' motion for partial summary judgment is GRANTED IN PART, DENIED IN PART, and DENIED IN PART WITHOUT PREJUDICE; and Defendants' motion for partial summary judgment is GRANTED IN PART, DENIED IN PART, and DENIED IN PART WITHOUT PREJUDICE.

## BACKGROUND

The following facts are taken from the amended complaint, unless otherwise noted.[1]  This case involves three types of home health care workers who allegedly did not receive overtime pay at the legally required rate from Defendants, their putative employers.  The three types of workers are "Consumer Directed Personal Assistance Program" Aides ("CDPAPs"), "Personal Care" Aides ("PCAs"), and "Home Health" Aides ("HHAs").  ECF No. 90-7 ¶ 10.  A CDPAP is an aide who works in the "Medicaid Consumer Directed Personal Assistance Program," a regulatory regime that the Court will describe in greater detail below.  *Id.* ¶ 11.  HHAs are "certified nursing assistants who have more specialized training than PCAs."  *Id.* ¶ 14.  All of these workers provide care and services to individuals in their homes.  *Id.* ¶ 15.  Plaintiff Rose Hardgers-Powell is a CDPAP who has been employed by Defendants since August 2015.  ECF No. 52 ¶ 5.  Plaintiff Yolanda Clay is a PCA who was employed by Defendants from May 2013 to May 2015.

The organization of and relationship between Defendants is not entirely clear.  The parties agree that "Angels In Your Home" is the D/B/A under which David Wegman provides home care services and employs home health care workers.  David Wegman owns the business.  ECF No. 90-7 ¶ 55.  Andy Wegman is an "executive employee" of the business, "holding at various times the titles of Administrator and President."  *Id.* ¶ 51.  Plaintiffs allege that Andy and David Wegman also operate the business through the entity "Angels In Your Home LLC."  Plaintiffs thus allege that all four defendants—the "Angels In Your Home" D/B/A; David Wegman; Andy Wegman; and Angels In Your Home LLC—are their employers.  Defendants dispute this contention, a matter which the Court addresses in further detail below.

---

[1] In resolving the present motions, the Court will not rely on the allegations in the amended complaint.  But to provide a broad overview of the relevant facts and procedural history, the Court will discuss the facts set forth in the amended complaint.  The Court will apply the applicable standards of review to resolve the pending motions.

The central dispute in this litigation concerns the rate at which Plaintiffs and other home health care workers were required to be paid for overtime work in 2015.  Generally, under the FLSA, an employer "must pay an employee 'at a rate not less than one and one-half times the regular rate at which [the employee] is employed' for any hours worked over 40 hours in a workweek." *Heredia v. Americare, Inc.*, No. 17cv6219, 2018 WL 2372681, at *2 (S.D.N.Y. May 23, 2018) (quoting 29 U.S.C. § 207(a)(1)).  The FLSA contains a number of exemptions to this overtime rule, one of which is known as the "companionship services exemption."  *See* 29 U.S.C. § 213(a)(15).  This exemption applies to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves."  *Id.*

Before 2015, this exemption applied to many home health care workers, except in certain circumstances.  *See Carrasco v. Life Care Servs., Inc.*, No. 17-cv-5617, 2017 WL 6403521, at *4 (S.D.N.Y. Dec. 15, 2017).  Subsequently, however, the Department of Labor ("DOL") issued an interpretative regulation—with an effective date of January 1, 2015—which barred "third-party employers . . . from relying on the Exemption."  *Heredia*, 2018 WL 2372681, at *2; *see* 29 C.F.R. § 552.109(a).  As a result, third-party agencies who employed previously exempt home health care workers would be required to pay overtime at a rate of at least one and one-half times each worker's regular rate.

But "[b]efore they could go into effect, the [proposed] regulations were challenged in Federal Court" on the theory that "DOL had exceeded its rulemaking authority."  *Carrasco*, 2017 WL 6403521, at *4.  "The District Court for the District of Columbia agreed, and vacated both regulations."  *Id.*  "However, on appeal, the D.C. Circuit vacated the district court's vacatur orders, concluding that the DOL acted well within its authority when it promulgated the regulations, and

that the regulations were reasonable in light of congressional intent." *Id.* "After the D.C. Circuit opinion, the DOL issued first, on September 14, 2015, a policy statement notifying the public that it would not bring enforcement actions against employers for violations of the regulations until 30 days after the date the Court of Appeals issues a mandate making its opinion effective." *Id.* (internal quotation marks omitted). The D.C. Circuit issued the mandate on October 13, 2015. *Feldman v. Bhras Home Care, Inc.*, No. 15-cv-5834, 2017 WL 1274055, at *2 n.3 (E.D.N.Y. Mar. 10, 2017). "On October 27, 2015, DOL released another policy statement, this time identifying November 12, 2015 (30 days after the issue of the mandate) as the last day of the non-enforcement policy." *Carrasco*, 2017 WL 6403521, at *4.

Courts have since grappled with the issue of when the regulation became effective. "The great majority of courts have found that the DOL Regulation was effective as of January 1, 2015, the date on which it was originally scheduled to take effect." *Id.* (collecting cases). On April 14, 2017, this Court reached the same conclusion when it denied Defendants' motion for partial dismissal, holding that the effective date of the rule was January 1, 2015. *See* ECF No. 27. Defendants' motion was premised on the position that the exemption did not take effect until October 13, 2015—the date on which the D.C. Circuit issued the mandate. *See* ECF No. 4-1 at 7, 10-11. Consequently, based on the Court's ruling, Defendants were required to pay their previously exempt home health care workers at the normal overtime rate as of January 1, 2015.

The NYLL provides another layer of complexity to the issue of proper overtime wages. "The NYLL incorporates FLSA's companionship exemption, with some variations." *Heredia*, 2018 WL 2372681, at *3. "Specifically, the NYLL provides that Exempt employees must be paid 1.5 times the *minimum wage*, while Non-Exempt employees must be paid 1.5 times their *regular pay rate*." *Id.* Thus, under "both FLSA and the NYLL, the default rule is that Non-Exempt

employees are paid 1.5 times their regular pay rate for overtime work." *Id.*; *see also Downie v. Carelink, Inc.*, No. 16-cv-5868, 2018 WL 3585282, at *5 (S.D.N.Y. July 26, 2018).

Plaintiffs raise three claims in their amended complaint. First, they contend that, between January 1 and December 31, 2015, Defendants violated the FLSA by failing to pay overtime wages at the correct rate—one and one-half times the regular rate (the "FLSA Overtime claim"). Second, Plaintiffs assert that Defendants violated the NYLL on the same basis (the "NYLL Overtime claim"). Third, Plaintiffs contend that Defendants violated NYLL § 195, which, among other things, requires every employer to provide, at the time of hiring, a notice containing certain wage information (the "NYLL Wage-Notice claim").[2] *See* N.Y. Lab. Law § 195(1)(a) [hereinafter "NYLL"]. Plaintiffs seek to bring these claims as class actions.

On April 14, 2017, this Court conditionally certified a class on the FLSA Overtime claim pursuant to 29 U.S.C. § 216(b). *See* ECF No. 27.

## DISCUSSION

Now before the Court is Plaintiffs' motion to certify two subclasses for the NYLL Overtime and Wage-Notice claims pursuant to Federal Rule of Civil Procedure 23. ECF No. 77.

---

[2] In their motion for summary judgment, Plaintiffs also raise a claim under NYLL § 195(3), which requires each employer to furnish a statement listing various information with every payment of wages. Defendants contend that this claim is not properly before the Court because Plaintiffs raised the claim "for the first time" in their motion for summary judgment. ECF No. 95 at 18. The Court agrees. In their amended complaint, Plaintiffs only raise the claim that Defendants violated the NYLL by failing to provide "proper written *notices* as required." ECF No. 52 at 13 (emphasis added). Plaintiffs never state that Defendants failed to provide any required *statements*—which is the term used in § 195(3). This reading is bolstered by the fact that in conjunction with their motion for class certification, Plaintiffs never cite or discuss a § 195(3) claim. Indeed, they state that their NYLL Wage-Notice claim "clearly refers to the one required at the time of hire." ECF No. 81 at 10. Permitting Plaintiffs to raise this claim at the present stage would thus prejudice Defendants and impede the Court's ability to meaningfully assess Plaintiffs' motion for class certification. Accordingly, the Court will not address the § 195(3) claim. *See Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim.").

In addition, both sides have moved for partial summary judgment on various matters.  *See* ECF Nos. 89, 90.  The Court first addresses Plaintiffs' motion to certify.

## I.   Motion for Class Certification under Rule 23

### a.   Legal Standard

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  Indeed, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).  "A district judge [must] assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."[3]  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006).  The Rule 23 inquiry may overlap with the merits of the underlying claims.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  When this occurs, courts are to consider the merits questions only to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

---

[3] When Plaintiffs filed their motion for class certification under Rule 23, discovery had yet to be completed. As the motions for summary judgment show, the factual record has since developed.  The Court relies on the record as presently developed in deciding whether certification is appropriate.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) (noting that a court should consider "all relevant evidence" in deciding whether to certify a class under Rule 23).

A district court's class certification ruling is reviewed under the highly deferential abuse of discretion standard, meaning the court "'is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions,' and [a reviewing court] will only find 'abuse' when the district court's decision 'rests on an error of law . . . or a clearly erroneous factual finding, or . . . its decision . . . cannot be located within the range of permissible decisions.'" *Myers*, 624 F.3d at 547 (internal citations omitted).

Rule 23(a) sets out four threshold requirements for certification:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).   The "failure to meet any one of Rule 23's requirements destroys the alleged class action." *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000).

The first requirement, numerosity, demands that joinder of all class members be impracticable, in the sense that "joinder would needlessly complicate and hinder efficient resolution of the litigation." *Spencer v. No Parking Today, Inc.*, No. 12 Civ. 6323, 2013 WL 1040052, at *11 (S.D.N.Y. Mar. 15, 2013), *R & R adopted by* 2013 WL 2473039 (June 7, 2013) (internal quotation marks omitted).   "Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement." *Id.*

With regard to the commonality requirement, the Supreme Court has observed that this language is easy to misunderstand since:

[a]ny competently crafted class complaint literally raises common "questions." . . . What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within

the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 349-50.   In the context of wage-and-hour disputes, courts have found commonality satisfied where the claim is grounded in an employer's allegedly unlawful policy or practice.  *See, e.g.*, *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 363 (S.D.N.Y. 2014) (finding commonality where underlying injury to the class was employer's policy of "paying employees only for their scheduled shifts when payroll records indicate that the employees worked longer than their scheduled shifts"); *Spencer*, 2013 WL 1040052, at *15 (collecting cases for the proposition that "[i]n wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices"). This is because, as *Dukes* instructs, the "common contention" that an employer's unlawful policy or practice has caused the class's injuries is "of such a nature that it is capable of classwide resolution."  *Dukes*, 564 U.S. at 350; *see also Ramirez*, 39 F. Supp. 3d at 363.  By contrast, where liability must be established through individualized proof, courts have declined to find commonality.  *See, e.g.*, *Xuedan Wang v. Hearst Corp.*, 617 F. App'x 35, 37-38 (2d Cir. 2015) (summary order) (plaintiffs failed to establish commonality in case brought by unpaid interns alleging that they were "employees" under FLSA and NYLL, where question of each intern's employment status involved "highly individualized inquiry").

"Typicality under Rule 23(a) requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Spencer*, 2013 WL 1040052, at *17 (internal quotation marks omitted).  "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and

whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* at *18.

The last requirement of Rule 23(a) is adequacy of representation. "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *Id.* at *20. "[T]he issue of appropriate class counsel is guided by Rule 23(g)," which sets forth a number of factors the court must consider. *Id.*; *see also* Fed. R. Civ. P. 23(g)(1). As to class representatives, they "cannot satisfy the adequacy requirement if they have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Spencer*, 2013 WL 1040052, at *20.

If the plaintiffs demonstrate by a preponderance of the evidence that the proposed class meets the requirements set out in Rule 23(a), then the court must determine whether the action satisfies one of the criteria of Rule 23(b). *See Dukes*, 564 U.S. at 345. Under Rule 23(b), a party may only maintain a class action by demonstrating that: (1) bringing the claims as separate actions would create a risk of inconsistent or adverse adjudications; (2) the party opposing the class has acted or refused to act on grounds that apply to the class in general, making injunctive or declaratory relief appropriate for the class as a whole; or (3) common questions of fact or law predominate over any individual questions and a class action is a superior method of efficiently

and fairly adjudicating the matter.  Fed. R. Civ. P. 23(b)(1)-(3).  Here, Plaintiffs rely on Rule

23(b)(3).[4]

Predominance "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Myers*, 624 F.3d at 547 (citations omitted).  The requirement's

purpose is to "ensure[] that the class will be certified only when it would 'achieve economies of

time, effort, and expense, and promote uniformity of decision as to persons similarly situated,

without sacrificing procedural fairness or bringing about other undesirable results.'"  *Id.*  The

requirement is satisfied "if resolution of some of the legal or factual questions that qualify each

class member's case as a genuine controversy can be achieved through generalized proof, and if

these particular issues are more substantial than the issues subject only to individualized proof."

*Id.*  "[T]he predominance inquiry is similar to, but more demanding than, the commonality

inquiry."  *Saleem v. Corp. Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2013 WL 6061340, at *7

(S.D.N.Y. Nov. 15, 2013).  Regarding superiority, Rule 23(b)(3) provides a list of relevant factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

For wage-and-hour cases, courts assess predominance in a manner similar to commonality:

the question is whether individualized inquiries regarding employees' work and pay will

predominate over classwide issues.  For example, courts have found the element of predominance

satisfied where the employer is alleged to have "a uniform policy or practice of denying overtime

---

[4] In the alternative, Plaintiffs argue that class treatment is appropriate under Rule 23(b)(1)(A).  *See* ECF
No. 77-1 at 9-10.  Given the disposition of Plaintiffs' motion, the Court need not reach this issue.

compensation" in violation of applicable law. *Spencer*, 2013 WL 1040052, at *25. This is so even if there are "factual variations in [employees'] hours worked or hourly rates," as those matters go "to the measure of damages." *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 334 (S.D.N.Y. 2009); *see also Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011). Moreover, "[w]here . . . all class members' allegations are based on uniform policies and practices giving rise to predominantly common questions of fact and law, a class action is superior." *Spencer*, 2013 WL 1040052, at *27 (collecting cases).

But where the employer's liability hinges on issues that demand substantial individualized analysis of each employee's duties, hours, or compensation, predominance is not satisfied. *See, e.g.*, *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2015) (as to putative class action brought by unpaid interns, predominance not satisfied because "the question of an intern's employment status is a highly context-specific inquiry"); *Ellersick v. Monro Muffler Brake, Inc.*, No. 10-cv-6525, 2017 WL 1196474, at *6-7 (W.D.N.Y. Mar. 31, 2017) (where key issue in case was whether exemption to overtime requirement applied, individualized issues relating to the exemption—including each employee's duties, pay, and commissions—would predominate over classwide questions).

### b. Analysis

#### i. Class Definitions

Before evaluating whether Plaintiffs' proposed subclasses should be certified under Rule 23, the Court must address the preliminary matter of how the proposed subclasses are defined. The Second Circuit recognizes an "implied requirement of ascertainability" under Rule 23. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). The "touchstone of ascertainability" is "whether the class is sufficiently definite so that it is administratively feasible

for the court to determine whether a particular individual is a member." *Id.* (internal quotation marks omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25.

Defendants challenge the proposed subclasses on the ground that they constitute fail-safe classes. "A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment." *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 356 (W.D.N.Y. 2014) (internal quotation marks omitted). "In a fail-safe class, either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Id.* at 357. "A proposed 'fail-safe' class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." *Id.* For example, one court held that a proposed class of merchants who were charged "excessive fees" by defendants constituted a fail-safe class. *Spread Enters., Inc. v. First Data Merchant Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014). In other words, the class "turn[ed] on whether the fees that the Merchants were being charged by the Defendants were excessive rather than on whether the Merchants were simply being charged a particular fee regardless of whether it was excessive." *Id.* Given this language, the class definition was not "neutral," in that it "presuppose[s] that the subject fees were excessive, despite the fact that the Defendants dispute this allegation." *Id.* at 69-70. And consequently, "if a jury determined that the fees at issue were not excessive under the terms of the [agreements], then there would no longer be any members of [the class], because a Merchant's membership . . . relies upon the fees being excessive and not on whether they were charged the fees at issue." *Id.* at 70.

The Court first examines the proposed NYLL Overtime Subclass.  Plaintiffs propose the following definition:

> All current or former employees of Defendants who provided care, assistance or companionship to individuals within their homes during the period January 1, 2015 through December 31, 2015, and who were paid by the hour but not paid at least one and one-half times their regular hourly rate for all hours worked in excess of forty in a single workweek.

ECF No. 77-1 at 2.  Defendants object to this definition because "it includes only those employees . . . who worked in excess of forty hours and who were not paid the legally required pay rate." ECF No. 80 at 25.  As a result, "[a]ny member of the class enjoys the prejudicial benefit of having already established they worked overtime and were not paid accordingly."  *Id.*

The Court disagrees.  Unlike in *Spread Enterprises*, and contrary to Defendants' argument, membership in Plaintiffs' proposed subclass does not hinge on a determination of Defendants' liability.  Rather, membership is based on the employee's particular rate for overtime pay in 2015—*i.e.*, that the rate was not "one and one-half times [the employees'] regular hourly rate," ECF No. 77-1 at 2—regardless of how much overtime, if any, the employee worked.  Similarly, all employees who were not paid at that rate would be members of the subclass whether or not Defendants were required to pay such rate.  Thus, the definition does not presume entitlement to, or the extent of, damages.  Even if the overtime rates for all members were below one and one-half times their regular hourly rates, members would vary in the amount of overtime, if any, they worked in 2015.  In short, the subclass is defined in terms of readily ascertainable, objective criteria that do not implicate the concerns of a fail-safe class.  The mere fact that the subclass definition includes the factual predicates for a successful claim does not, by itself, present a "barrier to certification."  *Wigod v. PNC Bank, N.A.*, 338 F. Supp. 3d 758, 774 (N.D. Ill. 2018).

Turning to the NYLL Wage-Notice Subclass, Plaintiffs propose the following definition:

> All current or former members of the Overtime Class who at any time six years prior to the filing of this action through the entry of final judgment in this matter, did not receive proper written notices as required under the Wage Theft Prevention Act.[5]

ECF No. 77-1 at 2.  Defendants contend that this definition is faulty "because it includes only those employees who were not provided with the notices required by the [NYLL]."  ECF No. 80 at 25. The Court agrees that this definition may be problematic.  This is because membership turns on whether the employee received the "proper" written notices that are "required" under the NYLL— issues that go to the merits of the case.  *See In re Rodriguez*, 695 F.3d 360, 369-70 (5th Cir. 2012) ("A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability.").  In analogous cases, other courts have found such language concerning.  *See, e.g.*, *Marin v. Apple-Metro, Inc.*, No. 12 CV 5274, 2017 WL 4950009, at *37-38 (E.D.N.Y. Oct. 4, 2017) (proposed class of employees "who were not provided with compliant wage notices as required by NYLL Section 195(1)" constituted fail-safe class); *Hicks*, 35 F. Supp. 3d at 357 (proposed class of employees "who were not provided wage notices that included the tip credit as required by [state law]" had "fail-safe qualities").

Even so, "[a] finding of a fail-safe class does not result in a bar to certification of the class." *Hicks*, 35 F. Supp. 3d at 357.  As Defendants concede, this Court retains the discretion to redefine a faulty class definition.  *See* ECF No. 80 at 25; *see also Rivera v. Harvest Bakery Inc.*, 312 F.R.D.

---

[5] The Wage Theft Prevention Act ("WTPA") amended the NYLL to require employers to provide wage notices to employees and to give employees a private cause of action if employers fail to do so.  *See Cazarez v. Atl. Farm & Food Inc.*, No. 15 CV 2666, 2017 WL 3701687, at *5 (E.D.N.Y. May 31, 2017).  For ease of reference, the Court refers to the NYLL and WTPA interchangeably.

254, 267 (E.D.N.Y. 2016).  The Court will therefore redefine the NYLL Wage-Notice Subclass in a manner that cures any fail-safe problems.  Deletion of any reference to the WTPA or the "propriety" of the written notices obviates those concerns.  *Accord Marin*, 2017 WL 4950009, at *39.  In addition, because the parties agree that the relevant NYLL wage-notice requirement has an effective date of April 9, 2011, the Court will limit the subclass to only those employees to whom the requirement is applicable.  *See id.*  Therefore, the subclass is redefined as follows:

> All current or former members of the NYLL Overtime Subclass who were hired on or after April 9, 2011.

Having resolved these preliminary matters, the Court proceeds to the merits of Plaintiffs' motion.[6]

### ii.  NYLL Overtime Subclass

The parties' dispute over certification of the NYLL Overtime Subclass largely relates to the elements of commonality and predominance.  *See* Fed. R. Civ. P. 23(a)(2), (b)(3). Nevertheless, the Court will proceed by analyzing all of the relevant requirements of Rule 23.

### 1.  Numerosity

Plaintiffs argue, and Defendants do not dispute, that the proposed subclass of 950 is so numerous that joinder of all members is impracticable.  The Court agrees.  *See Spencer*, 2013 WL 1040052, at *11 (collecting cases).

### 2.  Commonality

Defendants challenge commonality on the grounds that (1) the proposed subclass consists of members holding "various job titles" with different "duties, work schedules, and common conditions of employment," ECF No. 80 at 14; and (2) there is insufficient evidence of a policy or practice to pay subclass members below the required rate.

---

[6] Defendants further contend that certification of the NYLL Wage-Notice Subclass is improper because it includes members who do not have a cause of action.  *See* ECF No. 80 at 21-24.  The Court need not address this argument in light of its disposition of Plaintiffs' motion.

The Court disagrees.  Plaintiffs allege that, in 2015, Defendants had a policy or practice of paying potential subclass members at a rate below one and one-half times their regular hourly wages.  They further argue that such policy or practice violated state law.  The latter issue is a legal question susceptible to classwide resolution.  The former issue represents a common contention that, when resolved, will determine the ultimate factual question of the subclass's claim "in one stroke."  *Dukes*, 564 U.S. at 350.

Defendants fail to persuasively articulate how variations in subclass members' job titles, duties, schedules, or working conditions bear on that overarching, common factual issue.  This is not a case where the employer is alleged to have misapplied an individualized exemption to overtime requirements, which may create myriad specific issues concerning whether each employee fell within the applicable exemption.  *See, e.g.*, *Ellersick*, 2017 WL 1196474, at *6 (exemption at issue required "individual calculations for various time periods, and these calculations must be specific to each individual Plaintiff and their individual circumstances"); *Cowell v. Utopia Home Care, Inc.*, No. 14-CV-736, 2016 WL 4186976, at *6-7 (E.D.N.Y. Aug. 8, 2016).  Rather, Plaintiffs allege that Defendants had a common, unlawful policy towards the subclass as a whole, in that Defendants continued to apply the companionship exemption notwithstanding the new regulations.  As noted above, courts have found such allegations sufficient for purposes of commonality.  *See Spencer*, 2013 WL 1040052, at *15 (collecting cases).  Any variations in the number of hours each subclass member worked goes to damages and does not defeat commonality.  *Id.* at *16 (collecting cases); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("[B]ecause commonality does not mean that all issues must be identical as to each member, the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement.").

16

In addition, the Court is not persuaded that Plaintiffs' claim of a common policy or practice is conclusory or speculative.  In his deposition, Michael Wegman states that before January 1, 2016, Defendants' overtime policy was to treat home health care workers as an exempt class and pay them "time and a half of minimum wage."  ECF No. 89-4 at 9.  The payroll records reflect this policy.  *See generally* ECF No. 89-5.

Therefore, on the present record, the Court is satisfied that commonality exists.

### 3.  Typicality

Defendants do challenge the element of typicality.  The NYLL Overtime claim of the named Plaintiffs is typical of that of the subclass, as both arise from the same alleged unlawful policy and concern similar injuries.  Defendants do not suggest that Plaintiffs are subject to any unique defenses.  Typicality is satisfied.

### 4.  Adequacy of Representation

Similarly, Defendants do not challenge the adequacy requirement.  They do not contend that Plaintiffs possess any interests antagonistic to the remainder of the subclass or that class counsel are unqualified to conduct the litigation.  *See Mujo v. Jani-King Int'l, Inc.*, No. 16-cv-1990, 2019 WL 145524, at *6 (D. Conn. Jan. 9, 2019) (discussing requirement); Fed. R. Civ. P. 23(a)(4), (g)(1)(A).  Having reviewed the record, and given the absence of any objection by Defendants, the Court is satisfied that this requirement is met.

### 5.  Predominance

As discussed above, "the requirement [of predominance] is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Myers*, 624 F.3d at 547 (internal quotation marks

17

omitted).  To Plaintiffs, this is the sort of case that straightforwardly merits class-action treatment.

The ultimate issue of liability turns on questions capable of classwide resolution: "whether

Defendants were required to pay Class Members [one and one-half] times their regular rate for

overtime in 2015; and whether or not they did so."  ECF No. 81 at 4.  The first question is a legal

issue that demands no individualized inquiry, and the second question may be answered solely by

reference to Defendants' payroll records.  Plaintiffs assert that even subclass members' damages

are a matter of simple arithmetic, as they can be determined with relative ease from the payroll

records, which identify the number of overtime hours each employee worked in 2015.

Defendants paint a much different picture of the relevant issues.  Defendants allege that

employees submit their own timesheets and that the payroll records reflect nothing more than "a

self-serving calculation of hours by the employee."  ECF No. 80-1 at 3.  Consequently, Defendants

contend that their payroll records "are not a reliable way of calculating hours worked."  ECF No.

80 at 20.  They state that, instead, the Court will need to engage in individualized inquiries

regarding each employee's hours worked—which may involve evaluation of each employee's

duties, working conditions, schedules, and breaks—to establish liability and determine damages.

As such, in Defendants' view, predominance is not satisfied.

The Court concludes that the requirement of predominance is met in this case.  The Court

agrees with Plaintiffs that the two primary questions are (1) whether Defendants had a policy of

paying subclass members at a rate below one and one-half times the members' regular hourly

wages; and (2) whether such policy was unlawful under state law.  The factual question may be

resolved by generalized proof, and the legal question is applicable to the subclass as a whole.  As

a result, subclass members are "unified by common factual allegations" and a "common legal

theory" that satisfy the demands of Rule 23(b)(3).  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012).

The issues that Defendants raise—whether and to what extent each employee worked overtime in 2015—go to damages.  Individualized damage determinations do not necessarily undermine a finding of predominance.  *See, e.g.*, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Rivera*, 312 F.R.D. at 276; *Spencer*, 2013 WL 1040052, at *25 (collecting cases). This is particularly so in wage-and-hour cases if damages can be mechanically determined by reference to the employer's payroll records.  *See Ramirez*, 39 F. Supp. 3d at 364 (noting that "mechanical calculations based on payroll records" could be performed to determine employees' damages for alleged uncompensated on-the-clock work); *Rivera*, 312 F.R.D. at 271.  This is what Plaintiffs allege here: they contend that the assessment of damages is a matter of simple arithmetic based on Defendants' payroll records.

Nevertheless, Defendants claim that their payroll records should not be accepted as reliable.  Once those records are put aside, the issue of how much overtime each employee worked will entail a significantly more individualized inquiry into each employee's schedules, breaks, and working conditions for the whole of 2015.

In the first place, the Court disagrees with Defendants' claim that the case law supports the proposition that "pay stub records alone are not a reliable way of calculating hours worked."  ECF No. 80 at 20.  To the contrary, courts routinely rely on employers' payroll records to determine damages in these types of cases.  *See, e.g.*, *Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 130 (E.D. Pa. 2018) ("[W]hether [the employees] were underpaid [for work performed] can be determined simply by looking at [the employer's] payroll records."); *Ramirez*, 39 F. Supp. 3d at 364; *Rivera*, 312 F.R.D. at 271.  These cases are consistent with an employer's obligation to

maintain accurate payroll records under state and federal law.  *See* 29 U.S.C. § 211(c); NYLL § 195(4).  Indeed, at least one court rejected an employer's attempt to challenge the accuracy of its payroll records, finding such a position inconsistent with its statutory obligations and its own reliance on the records.  *See Williams*, 325 F.R.D. at 129 ("Failing to hold [the employer] to its own records would amount to excusing it from its record-keeping duty . . . .  The Court declines to let [the employer] off the hook like this.  If it ignored its duty, it did so at its peril." (internal quotation marks omitted)).

By contrast, the cases that Defendants cite are distinguishable.  For example, in *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401 (S.D.N.Y. 2018), home health care aides brought an action against their employer for allegedly paying a flat rate for 24-hour shifts that failed to comply with state and federal minimum-wage and overtime requirements.  The court denied class certification under Rule 23, concluding that the requirement of predominance was not met.  *Id.* at 417-19.  This was because the issue of how much each aide worked per shift would depend on individualized determinations—including whether the aide was residential or non-residential, and whether and how long the aide took breaks on each shift.  *Id.*  Although the court noted that such determinations could not be proved through the pay stub documents alone, *id.* at 418, this does not appear to be an affirmation of a bright-line principle.  Rather, the payroll records before the *Shillingford* court did not disclose the actual number of hours worked—only the number of shifts—so the court could not discern whether the employer was liable for violating overtime and minimum-wage requirements without a more individualized inquiry into each employee's work schedule.  *See id.* at 418-19.

Similarly, in *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015), the court declined to certify a class of personal bankers who alleged that they worked uncompensated overtime in

violation of the FLSA and NYLL.  *See Ruiz*, 93 F. Supp. 3d at 281-82.  In that case, bankers would input their hours worked into a tracking system that managers would review and approve.  *Id.* at 284.  In addition, the employer also tracked "when employees logged onto and off of their work computers at the beginning and end of the workday."  *Id.* at 285.  The court held that predominance was not satisfied in part because of "the necessity of additional individualized inquiries over damages," *i.e.*, the number of hours worked off the clock.  *Id.* at 296.  The employer's tracking system did not reveal those hours, and the court held that the computer logs, which were "developed for a distinct purpose (monitoring computer activity)," would not be "a reliable way of calculating hours worked."  *Id.*

In short, Defendants' cases reflect the notion that, where an employee complains that "off-the-clock" or otherwise unreported working hours have gone uncompensated, an employer's payroll records may not suffice to establish the number of hours the employee worked—additional, perhaps more individualized, evidence will be required.[7]  In neither case did the court broadly opine that employer payroll records are unreliable.

In any case, the Court is not convinced that the parties' dispute over the accuracy of Defendants' payroll records will create individualized damages issues that will overwhelm issues common to the class.  The evidence that Defendants offer to dispute the accuracy of their records consists of generalized proof that can be straightforwardly evaluated.  First, Michael Wegman notes in a declaration that an audit revealed "numerous discrepancies" in their payroll records.  ECF No. 95-1 ¶ 6.  The audit was conducted by comparing employees' submitted time sheets with

---

[7] In the amended complaint, Plaintiffs allege that "Defendants did not compensate Plaintiffs or Class Members for initial mandatory training and orientation sessions."  ECF No. 52 ¶ 74.  Although such a claim may present individualized liability and damages issues, Plaintiffs no longer press this claim in their motions for class certification and summary judgment.  Thus, it appears to have been abandoned.  *Cf. Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 105 (W.D.N.Y. 2011) (discussing abandonment at summary-judgment stage).

"records authorizing the number of hours for which patients/clients were authorized to receive care." *Id.* Second, Defendants identify seven employees whose entries in the payroll records are either impossible or incredible. *See* ECF No. 95 at 13-14. From the Court's perspective, the task of comparing and evaluating such evidence against the evidence tending to show the accuracy of the payroll records does not appear to be so onerous as to militate against class treatment. Moreover, the Court has many tools available to manage individualized damages issues and to allow Defendants to present their defenses. *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, No. 10 cv 5255, 2013 WL 2395288, at *9 (E.D.N.Y. May 31, 2013) (listing tools).

Accordingly, the Court concludes that the element of predominance is satisfied.

### 6. Superiority

Finally, the Court concludes that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where, as here, all class members' allegations are based on uniform policies and practices giving rise to predominantly common questions of fact and law, a class action is superior." *Spencer*, 2013 WL 1040052, at *27 (collecting cases). A class action is also the superior method because of the small damages suffered in relation to the expense of individual litigation, the efficiency of resolving the NYLL Overtime claim with the FLSA Overtime claim, and the absence of any significant difficulties in managing the class action. *See id.*

For these reasons, the Court concludes that the requirements for class certification under Rule 23 have been met for the NYLL Overtime Subclass, and Plaintiffs' motion to certify is granted in that respect.

### 7.  Class Counsel

Having found that Plaintiffs' counsel will adequately represent the NYLL Overtime Subclass, and after examining the relevant factors listed in Rule 23(g), the Court appoints Plaintiffs' counsel—Justin M. Cordello and Robert L. Mullin—as class counsel.

### 8.  Form of Class Notice

The parties are directed to confer and submit a jointly acceptable notice that is consistent with this Decision and Order and may be sent to class members.  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Hicks*, 35 F. Supp. 3d at 358 (stating that "[c]ourts routinely direct parties to confer and submit a jointly-acceptable form of notice in class actions").  The parties shall submit a joint motion to the Court with the proposed notice by April 8, 2019.  If the parties cannot come to an agreement, they shall submit competing proposed notices.

### iii.  NYLL Wage-Notice Subclass

Plaintiffs next seek to certify a subclass for their NYLL Wage-Notice claim.  Defendants object to certification of the subclass, arguing that they have always had a practice of providing the required written notice at the time of hire.  Because the Court concludes that the proposed subclass lacks commonality, it will not evaluate the other requirements of Rule 23.  Plaintiffs' motion to certify is denied as to the NYLL Wage-Notice Subclass.

As discussed above, courts have certified classes in wage-and-hour disputes where the claim is grounded in a common unlawful policy or practice.  *See, e.g.*, *Spencer*, 2013 WL 1040052, at *15.  It is in those circumstances that "a classwide proceeding" is likely to "generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 349.  Still, it is not enough to simply allege such a policy; courts require employees to provide sufficient evidence of the policy so as to justify class treatment.  *See, e.g.*, *Ruiz*, 93 F. Supp. 3d at 289-95.

In this case, Defendants provide the affidavit of Michael Wegman, who avers that "Angels has always provided proper [NYLL] notices to each of its employees at the time of hire."  ECF No. 90-1 ¶ 28.  To rebut this and demonstrate commonality, Plaintiffs provide two sets of evidence.  First, Plaintiffs tender "approximately 911 documents" that Defendants produced "as evidence that they complied with Section 195(1) of the [NYLL]."  ECF No. 89-2 ¶ 13.  Those documents are signed wage-notice forms.  One section of the form allows an individual to indicate when the notice was given.  *See, e.g.*, ECF No. 89-10 at 2.  Plaintiffs note that only "187 [of the forms provided by Defendants] . . . indicate that the notice was given at the time of hire."  ECF No. 89-2 ¶ 13.  "The remaining documents, approximately 724 of them, indicate that they were given at other times, such as annually or prior to a change in pay."  *Id.*  Furthermore, Plaintiffs note that Defendants have conceded they do not have signed notices for 73 of the potential subclass members.  ECF No. 90-8 at 25.

Second, Plaintiffs point out some suspicious circumstances regarding two of these forms.  The notice form for Hardgers-Powell shows two dates under the signature line: "11-16-2017" and "8-3-15."  ECF No. 89-11 at 2.  Plaintiffs' counsel avers that on November 16, 2017, Defendants contacted Hardgers-Powell and informed her that she needed to sign a document at their office.  ECF No. 89-2 ¶ 15.  When she and counsel arrived, Hardgers-Powell was provided with a wage-notice form with the date of "8-3-15" already filled in.  Hardgers-Powell signed the document but wrote down the date of execution, hence the two dates on the form.  Likewise, a wage-notice form signed by Sean McCombs shows two dates: a "D.O.H." date of "5/29/14," and the date of "11/16/17."  ECF No. 89-12 at 2.  To Plaintiffs, these "obviously backdated documents cast a cloud of suspicion on all documents submitted by Defendants."  ECF No. 89-1 at 13.  Defendants deny Plaintiffs' allegation but do not explain these discrepancies.

Still, even considered together, Plaintiffs' evidence is insufficient to show a common policy or practice that would satisfy the element of commonality. To be sure, the absence of compliant wage notices from Defendants' records may permit the inference that no such notices were given. *See United States v. Robinson*, 544 F.2d 110, 114 (2d Cir. 1976) ("The absence of a record of an event which would ordinarily be recorded gives rise to a legitimate negative inference that the event did not occur."). But the additional inferential step that must be made is that such noncompliance resulted from a common policy or practice of Defendants, as opposed to oversight or mere administrative error. That inference is weakly drawn from the mere fact that Defendants were unable to produce a large number of signed notices. In the first place, Defendants did produce over one hundred compliant notices, thus undermining Plaintiffs' claim of a uniform policy or practice.[8] In addition, Plaintiffs provide no other evidence—whether from home health care employees or an administrative employee or officer of Defendants—to connect the absence of signed wage notices to an explicit policy or *de facto* practice of declining to provide new employees with the notice required under state law.

Similarly, the evidence suggesting possible fraud on Defendants' part does not suffice. Even assuming that such evidence permits an inference of fraud, Plaintiffs only point to two instances. Without more, those isolated occurrences cannot be reasonably generalized to a subclass with hundreds of members. *See Ruiz*, 93 F. Supp. 3d at 291 (noting that to "prove uniformity of experience," plaintiffs must provide more than "scattershot evidence" and anecdotal accounts).

---

[8] The Court also notes that at least some of the wage notices that are not expressly marked as being given at the time of hire appear to have been signed by the employee on the date of hire. *Compare* ECF No. 89-8, *with* ECF No. 89-10.

In short, the circumstantial evidence Plaintiffs offer does not persuade the Court that the requirement of commonality is met. Plaintiffs' motion to certify the NYLL Wage-Notice Subclass is therefore denied. *See* Fed. R. Civ. P. 23(a)(2).

### c.   Conclusion

In sum, the Court certifies Plaintiffs' proposed NYLL Overtime Subclass. Justin M. Cordello and Robert L. Mullin are appointed as class counsel. Furthermore, the parties shall confer and submit a jointly acceptable notice to subclass members, which shall be submitted to the Court by April 8, 2019. If the parties cannot come to an agreement, they shall submit competing proposed notices. The Court declines to certify the proposed NYLL Wage-Notice Subclass.

## II.   Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on their NYLL Overtime and Wage-Notice claims as to David Wegman and the "Angels In Your Home" D/B/A.

### a.   Legal Standard

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

### b.  NYLL Overtime Claim

As to the NYLL Overtime claim, Plaintiffs raise essentially three arguments in support of their motion.  First, they argue that they are entitled to summary judgment against David Wegman on the claim,[9] because the undisputed facts show that he is the employer of subclass members and denied them overtime pay at the correct rate in 2015.  Second, Plaintiffs assert that the undisputed facts establish the amount of unpaid wages to which they are entitled.  Third, Plaintiffs contend that they are entitled to liquidated damages, interest, attorney's fees, and costs.  The Court examines each argument in turn.

### i.  David Wegman's Liability

Plaintiffs argue that David Wegman—through the name under which he does business, "Angels In Your Home"—is the employer of NYLL Overtime Subclass members, whether the members are CDPAPs, HHAs, or PCAs.  Defendants only appear to challenge Plaintiffs' claim that David Wegman is the employer of CDPAP workers; they develop no argument pertaining to HHA or PCA workers.  *See* ECF No. 95 at 6-12.  Therefore, given the lack of dispute, the Court confines its analysis to whether David Wegman is the employer of CDPAP workers.  *See Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of N.Y.*, No. 16-cv-5916, 2018 WL 654445, at *11 (E.D.N.Y. Jan. 31, 2018) ("[A] party that fails to raise an argument in its opposition papers in a motion for summary judgment has waived that argument.").

"[T]he NYLL applies to 'employers' and 'employees.'"  *Sajvin v. Singh Farm Corp.*, No. 17-cv-4032, 2018 WL 4214335, at *4 (E.D.N.Y. Aug. 13, 2018).  "'Employers' includes 'any individual, partnership, association, corporation, limited liability company . . . or any organized

---

[9] The parties agree that "Angels In Your Home" is merely the name under which David Wegman does business.  Because "[d]oing business under another name does not create an entity [distinct] from the person operating the business," the Court hereinafter disregards the D/B/A and refers only to David Wegman personally.  *In re Golden Distributors, Ltd.*, 134 B.R. 766, 769 (Bankr. S.D.N.Y. 1991).

group of persons acting as employer[,]' while an 'employee' is defined under the NYLL as 'any individual employed or permitted to work by an employer in any occupation.'" *Id.* (quoting NYLL § 651(5)-(6)). "[D]istrict courts in this Circuit have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Thomas v. River Greene Constr. Grp. LLC*, No. 17 Civ. 6954, 2018 WL 6528493, at *5 (S.D.N.Y. Dec. 11, 2018) (internal quotation marks omitted).

"The Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances," with "different sets of relevant factors based on the factual challenges posed by particular cases." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018). "The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees: control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Id.* (internal quotation marks omitted). "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* The following non-dispositive factors "are often relevant to this inquiry: Whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotation marks and brackets omitted). The Second Circuit has articulated two other tests that may be relevant depending on the circumstances. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142-43 (2d Cir. 2008). But regardless of the test used, a court must ultimately evaluate the totality of the circumstances—"any relevant evidence may be considered, and mechanical

application of [a] test is to be avoided." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988).

While "the findings of historical fact and the findings as to the existence and degree of each factor . . . [are] findings of fact," the "the ultimate decision as to whether an entity is an employer" is a question of law. *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 76 (2d Cir. 2003). This determination is "rarely suitable for summary judgment." *Sethi v. Narod*, 974 F. Supp. 2d 162, 187 (E.D.N.Y. 2013).

Defendants rely on the regulatory regime governing CDPAPs to argue that David Wegman cannot be considered their employer. New York's "Consumer Directed Personal Assistance Program . . . . is a Medicaid program providing services to chronically ill or physically disabled individuals who have a medical need for assistance with daily living activities and is an alternative to traditional home health care services that enables a consumer to have a higher degree of control over his or her own care." *Wegman v. Altieri*, No. 2015/11723, 2015 WL 13298515, at *2 (N.Y. Sup. Ct. Nov. 19, 2015). As its name implies, the program allocates significant responsibilities to the participant to manage and supervise home health care services. *See* NY Soc. Serv. Law § 365-f(3); 18 NYCRR § 505.28(g). Although the participant's plan of care is developed in collaboration with a medical professional, *see* 18 NYCRR § 505.28(d)(3)(ii)(*h*), the participant is responsible for managing that plan, including recruiting, hiring, training, supervising, scheduling, and firing each CDPAP. *Id.* § 505.28(g)(1).

Participants take a less active role in the administrative aspects of the program, however. Instead, a "fiscal intermediary" is designated as the entity responsible for managing those areas. *See id.* § 505.28(i)(1). The fiscal intermediary processes each CDPAP's wages and benefits, processes all taxes and wage withholdings, complies with worker's compensation, disability, and

unemployment insurance requirements, and maintains personnel records.  *See id.* § 505.28(i)(1)(i)-(iii).  It appears that—at least in Defendants' case—the fiscal intermediary acts as the employer of record for purposes of worker's compensation, disability benefits, unemployment insurance, income tax returns, and NYLL wage-notice requirements.  *See* ECF No. 102-2 at 7-8; ECF No. 89-11.

The fiscal intermediary's responsibilities go beyond those of a mere payroll-processing company.  Most importantly, the fiscal intermediary is responsible for "establishing the *amount* of each [CDPAP's] wages."  18 NYCRR § 505.28(i)(1)(i) (emphasis added).  The fiscal intermediary also screens potential CDPAPs before "service delivery" to ensure that they comply with certain state health requirements, *id.* § 505.28(i)(1)(ii), and monitors the participant to ensure that the participant has the "continuing ability to fulfill [his] responsibilities under the program."  *Id.* § 505.28(i)(1)(v).  Further, payments under the program are made directly to fiscal intermediaries, who are responsible for supporting claims with sufficient documentation.  *See id.* § 505.28(j).  Michael Wegman confirms that timesheets are audited each day to verify that CDPAPs are working the approved number of hours.  *See* ECF No. 102-2 at 6.

The division of responsibilities under the program makes the employer determination anything but clear-cut.  The Department of Labor provides the following guidance:

> Mary contacts her state government about receiving home care services. The state has a "self-direction program" that allows Mary to hire a direct care worker through an entity that has contracted with the state to serve as the "fiscal/employer agent" for program participants who employ direct care workers. The "fiscal/employer agent" performs tasks similar to those that commercial payroll agents perform for businesses, such as maintaining records, issuing payments, addressing tax withholdings, and ensuring that workers' compensation insurance is maintained for the worker, but is not involved in any way in the daily supervision, scheduling, or direction of the employee. Mary has complete budget authority over how to allocate the funds she receives under the Medicaid self-direction program, negotiates the wage rate with the direct care worker, is wholly responsible for day-to-day duty assignments, and has the sole power to hire and fire her direct care worker.

In the above scenario, the fiscal/employer agent is likely not an employer of the direct care worker, and the consumer is likely the sole employer. The fiscal/employer agent has no power to hire or fire, direct, control, or supervise the worker and cannot modify the pay rate or modify the employment conditions. The work is not performed on the fiscal/employer agent's premises, and the fiscal/employer agent has provided no tools or materials required for the tasks performed. However, any change in the specific facts of this scenario, such as if direct care workers are required to obtain approval from the fiscal/employer agent in order to arrive late or be absent from work or if the fiscal/employer agent sets the direct care workers' specific hours worked, may lead to a different conclusion regarding the employer status of the fiscal/employer agent.

The decision on joint employment would likely be different under the following scenario:

Example: Mary contacts her state government about receiving home care services. The state has a "public authority model" under which the state or county agency exercises control over the direct care workers' conditions of employment by deciding the method of payment, reviewing worker time sheets and determining what tasks each worker may perform. The agency also exercises control over the wage rate [] by setting the wage rate.

In the above scenario, the state or county agency is likely an employer of the direct care workers under the FLSA. The state or county agency directs, controls, and supervises the workers, and can modify the pay rate and other employment conditions such as the number of hours worked and the tasks performed. In addition, the agency may be an employer of the direct care workers even if a private third party agency is also found to be an employer; such joint employment arrangements would result in the state or county agency and the private third party agency being jointly and severally liable for the direct care workers' wages.

Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60483-84 (Oct. 1, 2013) (citation omitted). Although the present circumstances are not directly analogous to either illustration, the guidance provides two extremes that serve to orient the Court in making its determination.

After reviewing the statutory and regulatory underpinnings of the program, and considering the undisputed facts in the record, the Court concludes that David Wegman is the employer of CDPAP workers. Although this determination is normally fact-intensive, in this case the nature

of the working relationship between Wegman, the CDPAPs, and participants is plain from the applicable statutes and regulations, as well as the undisputed facts. The question is one susceptible to resolution at summary judgment.

In reaching this conclusion, the Court finds the following considerations significant. First, fiscal intermediaries like David Wegman establish the amount of each CDPAP's wages. This is a substantial factor militating against Defendants' argument. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (finding president of hotel corporations to be employer for FLSA purposes because, *inter alia*, he held the "purse strings" and it "was only he who could authorize compliance with the Fair Labor Standards Act"). Indeed, David Wegman's role in setting wage rates and managing payments distinguishes his position from that of a mere payroll company. *Compare Dianda v. PDEI, Inc.*, 377 F. App'x 676, 678 (9th Cir. 2010) (payroll company that did not exercise control over employment relationship was not an employer under FLSA), *with Childress v. Ozark Delivery of Mo. L.L.C.*, 95 F. Supp. 3d 1130, 1144 (W.D. Mo. 2015) (human-resources contractor was joint employer in part because it participated "in determining compensation policies," which "is especially significant in the context of FLSA litigation [since] that subject is the focus of this litigation" (internal quotation marks omitted)).

Second, in his role as fiscal intermediary, David Wegman maintains personnel records for CDPAPs. *See* 18 NYCRR § 505.28(i)(1)(iii); *see also Tapia*, 906 F.3d at 61.

Third, in many circumstances, David Wegman identified himself and his D/B/A as the employer of record for CDPAPs. While the label that the parties place on their working relationship may not be determinative, it is also not irrelevant. *See Brock*, 840 F.2d at 1059 ("Though an employer's self-serving label of workers as independent contractors is not controlling, an employer's admission that his workers are employees covered by the FLSA is

highly probative." (citations omitted)); *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 268 n.5 (5th Cir. 1987) (stating that the tax treatment of a worker "can be considered as a factor in deciding [the worker's] status"). Here, David Wegman identified himself and his D/B/A as the employer on NYLL wage notices. ECF No. 89-10 at 2. Defendants also concede that they "handle payroll and unemployment taxes, . . . arrange workers compensation and statutory disability coverage," ECF No. 95 at 9, and issue "W-2s" for CDPAPs. ECF No. 102-2 at 7.

Fourth, and most importantly, the statutory and regulatory scheme under which participants, fiscal intermediaries, and CDPAPs operate is not one where overall operational control can be readily isolated to one actor, because each actor's responsibilities are interwoven with the others. While participants undoubtedly control and supervise the day-to-day responsibilities of CDPAPs, fiscal intermediaries screen potential CDPAP candidates, set hourly wage rates, and audit CDPAPs' timesheets. Moreover, fiscal intermediaries are tasked with monitoring participants to ensure that they can manage their supervisory responsibilities. In other words, the responsibilities that would be traditionally associated with one employer are divided between the participant and fiscal intermediary, who work in tandem to control each CDPAP's working conditions and to ensure the delivery of home health care services.

That is perhaps why treating a fiscal intermediary as something other than the employer of CDPAPs fails at a practical level. If the participant is treated as the only employer for purposes of the FLSA and NYLL, it would be the participant who would be liable for wage-and-hour violations—yet the participant has no power to control wage rates and does not manage payments under the program. Conversely, the fiscal intermediary, who does control wage rates and manage payments, could not be subject to liability for even willful violations of wage-and-hour laws. By contrast, treating the fiscal intermediary as an employer recognizes the interdependent control that

participants and fiscal intermediaries have over CDPAPs' working conditions. It also ensures that the actor with the power to ensure compliance with the FLSA and NYLL has a sufficient incentive to do so. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 116-17 (2d Cir. 2013) (discussing policy reasons favoring expansive interpretation of definition of "employer"); *Smith v. MTI Limo & Shuttle, Inc.*, No. 10-cv-448, 2011 WL 13272825, at *7 (N.D. Ga. Sept. 12, 2011) ("The purpose of the joint employer rule is to expand liability under the FLSA to all employers responsible for compliance with the Act and prevent employer evasion of overtime obligations.").

Accordingly, the Court concludes that, for purposes of the NYLL, David Wegman is the employer of CDPAP subclass members.

Beyond their assertion that David Wegman is not the employer of CDPAPs, Defendants develop no other objection to Plaintiffs' substantive claim that David Wegman failed to pay overtime wages at the rate required under the NYLL. Indeed, Michael Wegman admits in his deposition that the overtime policy in 2015 was to treat "home health workers [as] an exempt class" and pay them "time and a half of *minimum wage*." ECF No. 89-4 at 9 (emphasis added). The payroll records reflect this policy. *See generally* ECF No. 89-5. But, given that Defendants could not rely on the companionship exemption as of January 1, 2015, subclass members were entitled to overtime wages at the rate of one and one-half times their *regular rate*. *See Heredia*, 2018 WL 2372681, at *3. The failure of David Wegman to pay sufficient overtime wages subjects him to liability under state law.

Accordingly, Plaintiffs, and the NYLL Overtime Subclass as a whole, are entitled to summary judgment against David Wegman as to liability on the NYLL Overtime claim.

### ii.  Unpaid Wages

Plaintiffs argue that the undisputed facts establish that the amount of owed overtime wages is $463,558.11.  Plaintiffs calculate the owed overtime wages by reference to Defendants' payroll records.[10]

As discussed in some detail above, Defendants dispute the accuracy of their payroll records.  Instead, they estimate that they only owe approximately $210,615 in unpaid overtime wages.  Defendants arrive at this figure as follows:  Pursuant to a Department of Labor audit, Defendants owed $59,120.13 in overtime wages to employees for the period between October 13 and December 31, 2015.  This amount has been paid to affected employees or deposited with the Department of Labor.  *See* ECF No. 90-1 ¶ 40.  Based on the audit, Defendants calculate that the "average daily amount of . . . unpaid overtime" is $739.  ECF No. 95 at 13.  That daily average multiplied by the 285-day period between January 1 and October 12, 2015 equals $210,615.  *Id.* at 13-14.

The Court declines to address the issue of unpaid wages at this time.  Defendants appear to concede that *some* amount of overtime wages remain unpaid; they merely argue that there "is a genuine issue of fact as to [that] amount."  *Id.* at 14.  Indeed, even under Defendants' estimate, David Wegman is liable for over $200,000 in unpaid wages.  Thus, it would seem to the Court that there may be areas of agreement between the parties as to the amount owed to at least some subclass members.

Consequently, the Court finds it prudent to give the parties an opportunity to meet and confer regarding the amount of unpaid overtime wages owed to each member of the NYLL Overtime Subclass.  It will not be sufficient for the parties to merely discuss their broad

---

[10] Plaintiffs note that some subclass members do not have entries in Defendants' payroll records, which prevents Plaintiffs from determining the amount of wages owed to those members.  ECF No. 89-1 at 9.

disagreement with the overall amount owed to the subclass as a whole, as they do in their current briefing.  Rather, each side should identify the amount that they contend is owed to *each member* of the subclass and compare that amount to the amount proffered by the opposing side as to such member.  This will ensure that the remaining damages issues are identified with specificity.  The parties are also free to discuss any other relevant topics related to damages.  The parties must meet and confer by March 4, 2019.

After the parties have conferred, the parties shall jointly submit a memorandum to the Court.  That memorandum must contain the following:  First, as to amounts that the parties agree are owed to subclass members, the memorandum shall identify (1) the name of each subclass member, and (2) the amount of unpaid wages owed to that subclass member.  Second, as to amounts over which the parties disagree, the memorandum shall identify (1) the name of each subclass member, (2) the amount that Plaintiffs allege is owed to that subclass member, supported by citations to specific record evidence, and (3) the amount that Defendants allege is owed to that subclass member, supported by citations to specific record evidence.  To the extent necessary, the parties may file appendices consisting of the record evidence supporting their respective positions.  In addition, the parties should factor in the overtime wages already paid by Defendants pursuant to the Department of Labor audit.

The parties must submit this joint memorandum by April 8, 2019.  By that same deadline, Plaintiffs may, but are not required to, renew their motion for summary judgment on the issue of damages.

This procedure will serve to clarify and identify the exact factual issues that remain with respect to unpaid wages.  With the issues so clarified, if Plaintiffs file a renewed motion for summary judgment on the issue of damages, the Court will be able to more readily assess the

existence and extent of factual disputes.  Moreover, it will be helpful in determining how the action should proceed if the issue of damages cannot be resolved at summary judgment.  To that end, in their joint memorandum, the parties should also submit their respective proposals on how the Court should proceed to resolve any damages issues that are not susceptible to resolution on summary judgment.

Therefore, Plaintiffs' motion for summary judgment on the issue of unpaid overtime wages is denied without prejudice.

### iii.   Liquidated Damages, Interest, Attorney's Fees, and Costs

Plaintiffs contend that they are entitled to liquidated damages, prejudgment interest, attorney's fees, and costs.  *See* NYLL § 198(1-a).

Because the Court is denying without prejudice Plaintiffs' motion with respect to unpaid wages, the Court will likewise defer consideration of Plaintiffs' motion with respect to these other remedies.  If Plaintiffs choose to renew their motion for summary judgment on the issue of compensatory damages, they may also move for summary judgment on these issues.

The Court notes that the parties do not appear to have a significant dispute over the issue of liquidated damages.  Plaintiffs seem to acknowledge that Defendants have a legitimate defense to such damages for the period between January 1 and October 13, 2015.  *See* ECF No. 89-1 at 10; ECF No. 102 at 9.  Likewise, Defendants seem to acknowledge that their position becomes less compelling for the period after October 13, 2015.  *See* ECF No. 90-8 at 6-7; ECF No. 95 at 22-24. The parties are free to discuss this issue when they meet and confer.  To the extent they come to an agreement regarding liquidated damages, they should incorporate that agreement into their joint memorandum.  Regardless, at this time, the Court declines to evaluate the parties' respective positions.

### c.  NYLL Wage-Notice Claim

Plaintiffs argue that they are entitled to summary judgment on their NYLL Wage-Notice claim against David Wegman.  Because the Court has declined to certify the NYLL Wage-Notice Subclass, Plaintiffs' motion is denied as moot insofar as they request summary judgment as to the subclass.

It is not entirely clear whether Plaintiffs are also moving for summary judgment on this claim as to the individual plaintiffs, Rose Hardgers-Powell and Yolanda Clay.  To the extent they are, the motion is denied.  As to Hardgers-Powell, Plaintiffs allege that Defendants attempted to have Hardgers-Powell sign a backdated wage-notice form.  Defendants dispute the allegation and assert generally that their policy is to provide compliant wage-notice forms.  Thus, as to whether Hardgers-Powell received a compliant wage notice at the time of hire, there is a factual dispute that precludes summary judgment.  *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

As to Clay, Plaintiffs develop no argument and cite no evidence demonstrating that Defendants failed to provide Clay with the required wage notice at the time of hire.  Therefore, Plaintiffs are not entitled to summary judgment to the extent they are bringing an individual NYLL Wage-Notice claim on Clay's behalf.

Therefore, Plaintiffs' motion for summary judgment on the NYLL Wage-Notice claim is denied.

### d.  Summary

For the reasons set forth above, Plaintiffs' motion for summary judgment is GRANTED IN PART, DENIED IN PART, and DENIED IN PART WITHOUT PREJUDICE, as follows:

1. The motion is granted insofar as Plaintiffs are entitled to summary judgement against David Wegman on the issue of liability for the NYLL Overtime claim.

2. The motion is denied insofar as Plaintiffs request summary judgment against David Wegman on the NYLL Wage-Notice claim.

3. The motion is denied without prejudice insofar as Plaintiffs request summary judgment on the issue of compensatory damages, liquidated damages, interest, attorney's fees, and costs for the NYLL Overtime claim.  By April 8, 2019, Plaintiffs may, after they have met and conferred with Defendants, file a renewed motion for summary judgment with respect to damages on the NYLL Overtime Claim.

4. The Court orders the parties as follows:

   a. By March 4, 2019, the parties shall meet and confer regarding the amount of unpaid overtime wages owed to *each* member of the NYLL Overtime Subclass;

   b. By April 8, 2019, the parties shall jointly submit a memorandum to the Court.  That memorandum shall contain the following:

      i. As to amounts that the parties agree are owed to subclass members, the memorandum shall identify (1) the name of *each* subclass member, and (2) the amount of unpaid wages owed to that subclass member;

      ii. As to amounts over which the parties disagree, the memorandum shall identify (1) the name of *each* subclass member, (2) the amount that Plaintiffs allege is owed to that subclass member, supported by citations to specific record evidence, and (3) the amount that Defendants allege is owed to that subclass member, supported by citations to specific record evidence; and

      iii. The memorandum shall contain the parties' respective proposals for how the Court should proceed to resolve any damages issues that are not susceptible to resolution on summary judgment.

## III. Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment, arguing that: (1) Plaintiffs are not entitled to liquidated damages under either the FLSA or NYLL; (2) Plaintiffs are not entitled to "stacked" liquidated damages under both the FLSA and NYLL; (3) Defendants have already paid overtime wages accruing after October 13, 2015 as a result of the Department of Labor audit; (4) there is no

private action for Defendants' alleged failure to retain signed wage-notice forms under the NYLL; and (5) Angels In Your Home LLC and Andy Wegman are not Plaintiffs' or subclass members' "employers" for purposes of the FLSA and NYLL.

### a.  Analysis

#### i.  Damages

Defendants raise three arguments pertaining to damages.  First, Defendants contend that, because they believed in good faith that they were not required to pay Plaintiffs at the higher overtime rate, Plaintiffs are not entitled to liquidated damages under either the FLSA or NYLL. *See* 29 U.S.C. §§ 216(b), 260; NYLL § 198(1-a).   Second, Defendants argue that, even if Plaintiffs could prove that Defendants did not act in good faith, Plaintiffs "would only be entitled to recovery under either the FLSA [or] NYLL, not both."  ECF No. 90-8 at 22.  Third, Defendants state that, pursuant to a Department of Labor audit for the period between October 13 and December 31, 2015, they paid $59,120.13 in unpaid overtime wages to employees.  *Id.* at 23.  Defendants therefore assert that they "are entitled to partial summary judgment to the extent the Amended Complaint seeks damages related to overtime wages that accrued on or after October 13, 2015." *Id.* at 24.

In light of the Court's order requiring the parties to meet and confer on the issue of unpaid wages, the Court declines to address these matters at this time.  Defendants' motion is denied without prejudice with respect to these damages issues.  Like Plaintiffs, Defendants may, after they have met and conferred with Plaintiffs, file a renewed motion for summary judgment as to damages.

### ii.   Private Action for Failure to Retain Wage Notices

Defendants argue that the NYLL "does not create a private cause of action . . . for an employer's failure to retain [a signed wage notice] for six years."  ECF No. 90-8 at 24-25. Plaintiffs do not dispute that proposition—though they argue that they are not making such a claim. Instead, Plaintiffs are claiming that they did not "receive[] the required notices."  ECF No. 94 at 8.  The Court agrees that Plaintiffs are not raising such a claim, so Defendants' argument does not merit any relief.

Defendants also appear to argue that they are entitled to summary judgment on the NYLL Wage-Notice claim because they had "a long-standing policy of providing every employee with a [wage] notice at the time of hire."  ECF No. 90-8 at 25.  Their motion is denied as moot with respect to the potential class claim, as the Court has declined to certify that subclass.  The motion is also denied to the extent that Defendants are challenging Plaintiffs' individual claims.  As to Hardgers-Powell, the Court has determined that genuine issues of material fact preclude summary judgment.  As to Clay, Defendants—like Plaintiffs—fail to develop any argument specifically demonstrating their entitlement to summary judgment.  Without more, the Court declines to grant summary judgment.  *Cf. Scull v. Hennegan*, No. 15-cv-309, 2017 WL 2374496, at *7 (W.D.N.Y. May 4, 2017) (noting that "perfunctory arguments fail to meet [the movant's] burden on summary judgment").

### iii.   "Employer" Status as to Andy Wegman and Angels in Your Home LLC

Defendants argue that Andy Wegman and Angels in Your Home LLC are entitled to summary judgment on all claims, because neither is an "employer" for purposes of the FLSA or NYLL.  Specifically, they contend that the limited liability company is merely an "estate planning entity for the Wegman family."  ECF No. 90-1 ¶ 42.  As for Andy Wegman, Defendants assert

that he is "an executive employee" of the agency, "holding at various times the titles of Administrator and President," but that he has no role in hiring, firing, or supervising subclass members. *Id.* ¶¶ 44-47. In their briefing, Plaintiffs do not dispute Defendants' claims. The Court concludes that Andy Wegman and Angels In Your Home LLC are entitled to summary judgment on all claims.

"A party must be considered an employer to be liable pursuant to the FLSA and NYLL." *Peng Bai v. Fu Xing Zhuo*, No. 13 Civ. 5790, 2014 WL 2645119, at *2 (E.D.N.Y. June 13, 2014). The same analysis applies under both statutes to determine who is an employer. *See Thomas*, 2018 WL 6528493, at *5. As is relevant here, "[a] corporate officer may be considered an employer if the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines the employees' salaries and makes hiring decisions." *Peng Bai*, 2014 WL 2645119, at *2 (internal quotation marks omitted).

In this case, Defendants allege, and Plaintiffs do not meaningfully dispute, that Angels In Your Home LLC is an entity unaffiliated with the home health care agency that David Wegman operates. Therefore, that limited liability company cannot be considered the employer of Plaintiffs or subclass members. Similarly, Defendants allege that, while Andy Wegman is a high-level "executive employee," he has no authority to hire, fire, or otherwise control Plaintiffs and subclass members. *See Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 139 (2d Cir. 1999) (stating that the "the overarching concern" regarding "employer" status is "whether the alleged employer possessed the power to control the workers in question"). Accordingly, Angels In Your Home LLC and Andy Wegman are entitled to judgment as a matter of law on all claims, and Defendants' motion is granted to that extent.

### b.  Summary

Defendants' motion for partial summary judgment is GRANTED IN PART, DENIED IN PART, and DENIED IN PART WITHOUT PREJUDICE.  The motion is granted insofar as Defendants Angels In Your Home LLC and Andy Wegman are entitled to summary judgment on all claims.  The motion is denied without prejudice insofar as Defendants request summary judgment on damages issues.  The motion is otherwise denied.

## CONCLUSION

For the reasons discussed above, the Court rules as follows:

1.  Plaintiffs' Motion to Certify Class (ECF No. 77) is GRANTED IN PART and DENIED IN PART:

    a.  The motion is granted insofar as the Court certifies the NYLL Overtime Subclass. The subclass is defined as follows:

    > All current or former employees of Defendants who provided care, assistance or companionship to individuals within their homes during the period January 1, 2015 through December 31, 2015, and who were paid by the hour but not paid at least one and one-half times their regular hourly rate for all hours worked in excess of forty in a single workweek.

    b.  The motion is denied insofar as the Court declines to certify the NYLL Wage-Notice Subclass.

    c.  Plaintiffs' counsel—Justin M. Cordello and Robert L. Mullin—are appointed as class counsel.

    d.  The parties are ordered to confer and submit a jointly acceptable notice that is consistent with this Decision and Order and may be sent to subclass members. The parties shall submit a joint motion to the Court with the proposed notice by April 8, 2019.  If the parties cannot come to an agreement, they shall submit competing proposed notices.

2.  Plaintiffs' Motion for Partial Summary Judgment (ECF No. 89) is GRANTED IN PART, DENIED IN PART, and DENIED IN PART WITHOUT PREJUDICE:

    a.  The motion is granted insofar as Plaintiffs are entitled to summary judgment against David Wegman on the issue of liability for the NYLL Overtime claim.

    b.   The motion is denied insofar as Plaintiffs request summary judgment against David Wegman on the NYLL Wage-Notice claim.

    c.   The motion is denied without prejudice insofar as Plaintiffs request summary judgment on the issue of compensatory damages, liquidated damages, interest, attorney's fees, and costs for the NYLL Overtime claim.  By April 8, 2019, Plaintiffs may, after they have met and conferred with Defendants, file a renewed motion for summary judgment with respect to damages on the NYLL Overtime Claim.

    d.   The Court orders the parties as follows:

        i.   By March 4, 2019, the parties shall meet and confer regarding the amount of unpaid overtime wages owed to *each* member of the NYLL Overtime Subclass;

        ii.   By April 8, 2019, the parties shall jointly submit a memorandum to the Court.  That memorandum shall contain the following:

            1.   As to amounts that the parties agree are owed to subclass members, the memorandum shall identify (1) the name of *each* subclass member, and (2) the amount of unpaid wages owed to that subclass member;

            2.   As to amounts over which the parties disagree, the memorandum shall identify (1) the name of *each* subclass member, (2) the amount that Plaintiffs allege is owed to that subclass member, supported by citations to specific record evidence, and (3) the amount that Defendants allege is owed to that subclass member, supported by citations to specific record evidence; and

            3.   The memorandum shall contain the parties' respective proposals for how the Court should proceed to resolve any damages issues that are not susceptible to resolution on summary judgment.

3.   Defendants' motion for partial summary judgment (ECF No. 90) is GRANTED IN PART, DENIED IN PART, and DENIED IN PART WITHOUT PREJUDICE:

    a.   The motion is granted insofar as Defendants Angels In Your Home LLC and Andy Wegman are entitled to summary judgment on all claims.  The Clerk of Court is directed to terminate these two defendants from the action.

    b.   The motion is denied without prejudice insofar as Defendants request summary judgment on various damages issues.  By April 8, 2019, Defendants may, after they

have met and conferred with Plaintiffs, file a renewed motion for summary judgment as to damages.

c. The motion is otherwise denied.

IT IS SO ORDERED.

Dated: January 30, 2019
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court